```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TENNESSEE
                          WESTERN DIVISION
```

LINDA SUE MHOON                     )
(a/k/a LINDA SUE BUCKINGHAM),       )
                                    )
     Plaintiff,                     )
                                    )
vs.                                 )    No. 12-3053-JPM-tmp
                                    )
                                    )
U.S. BANK HOME MORTGAGE, and        )
and JOHN DOES 1-20,                 )
                                    )
     Defendants.                    )

## REPORT AND RECOMMENDATION

On December 6, 2012, plaintiff Linda Sue Mhoon (a/k/a Linda Sue Buckingham), a resident of Shelby County, Tennessee, filed a *pro se* complaint against defendant U.S. Bank, N.A., incorrectly named as U.S. Bank Home Mortgage ("U.S. Bank").[1] (ECF No. 1.) Mhoon also filed a motion seeking leave to proceed *in forma pauperis*. (ECF Nos. 2, 4.) On December 17, 2012, the court issued an order granting Mhoon leave to proceed *in forma pauperis*, and referred the case to the *pro se* staff attorney for screening pursuant to 28 U.S.C. § 1915(e)(2) and Local Rule 4.1(a). (ECF No. 5.) While the complaint

---

[1] The correct name for U.S. Bank is taken from defendant's Motion to Dismiss. (ECF No. 10.) Mhoon also named "Does 1-20" as defendants. Service of process cannot be made on unnamed or fictitious parties. The filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitations against those parties. See Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996); Bufalino v. Mich. Bell Tel. Co., 404 F.2d 1023, 1028 (6th Cir. 1968). Accordingly, it is recommended that the complaint be dismissed against the John Doe defendants.

was still in the process of being screened, Mhoon obtained a summons and prematurely attempted service upon U.S. Bank.  Subsequently, U.S. Bank filed a Motion to Dismiss (ECF No. 10) arguing, among other things, that (1) plaintiff has not sufficiently pleaded a breach of contract claim; (2) plaintiff's claims for gross negligence and violation of the duty of good faith fail as a matter of law; (3) plaintiff's allegations based on violations of the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA") are barred by the applicable statute of limitations and fail to state a claim because U.S. Bank was not the originating lender; and (4) plaintiff's claims for fraud, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and lack of standing all fail as a matter of law.  Mhoon filed a response in opposition to the Motion to Dismiss.  (ECF No. 11.)  This case has now been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.  (ECF No. 12.)

For the reasons below, it is recommended that the complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and that the defendant's Motion to Dismiss be denied without prejudice.[2]

### I. PROPOSED FINDINGS OF FACT

This case is an action to prohibit a nonjudicial foreclosure of real property located at 1215 Old Hickory Road, in Memphis, Tennessee

---

[2]Because the court had not authorized the issuance of the summons, Mhoon could not have effected proper service of process upon the defendant.  Thus, the filing of the Motion to Dismiss was premature. It is recommended that the Motion to Dismiss be denied without prejudice.

("Property").  According to the complaint, Mhoon resides at the Property and is the sole borrower under the deed of trust, which is dated May 21, 2007.  (ECF No. 1, Compl. ¶¶ 1, 3, Exhibit 2.)  The complaint alleges that U.S. Bank "is engaged in efforts to illegally foreclosure [sic] on [Mhoon's] home" because "no balance is due on the property as of September 13th, 2012, when Plaintiff Setoff the outstanding balance via EFT [Electronic Funds Transfer] in the amount of [$139,001.78]."  (Id. at 2.)  In regard to the alleged payoff of the loan via EFT, the complaint alleges that U.S. Bank acted with "gross negligence" and violated its duty of good faith:

> On September 13, 2012 Plaintiff sent defendant US Bank an [EFT] #2562 *via certified mail* #7012 0470 0000 0195 8095 in the amounts of $139.011.78 to discharge the associated debts.  [EXHIBITS 1 and 4].  Plaintiff submitted this EFT instrument to Defendant US Bank with specific instructions in order to have the debt associated with account #4800201182 to be discharged.  US Bank received this instrument on September 17, 2012.  [EXHIBIT 3]

(Id. ¶ 9) (emphasis added).[3]  In addition, the complaint alleges breach of contract because U.S. Bank "failed to send any and all acceleration, default, and foreclosure notices" to Mhoon in the manner required by the deed of trust.  (Id. ¶ 6.)  The complaint further alleges U.S. Bank violated TILA; violated RESPA by failing to provide a good faith estimate; violated the RICO statute and engaged in fraud; and lacked standing to initiate foreclosure proceedings on the Property.  (Id. ¶¶ 22-68.)  Mhoon seeks to enjoin U.S. Bank from foreclosing on the Property, declaratory relief

---

[3]According to Mhoon's response in opposition to the Motion to Dismiss, U.S. Bank rejected this "payment" and notified her that "The instrument is not an acceptable form of payment and was not applied" to her account.  (ECF No. 11 at 4.)

including a declaration that U.S. Bank has no enforceable lien on the Property, reinstatement of Mhoon on the title, cancellation of the foreclosure sale, and compensatory and punitive damages.

## II. PROPOSED CONCLUSIONS OF LAW

### A. 28 U.S.C. § 1915(e)(2) Screening

Pursuant to Local Rule 4. 1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The Clerk is authorized to issue summons to *pro se* litigants only after that review is complete and an order of the court issues. This report and recommendation will constitute the court's screening.

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action —

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B)(i-iii).

### B. Standard of Review for Failure to State a Claim

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007), are applied. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in

the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks omitted); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to

create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.  Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.  While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

**C. The Complaint Fails to State Any Claims on Which Relief May Be Granted**

   *1. Electronic Funds Transfer Act*

The Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq. ("EFTA") was enacted as part of the comprehensive Consumer Credit Protection Act, 15 U.S.C. §§ 1601–1693r ("CCPA") and "protects individual consumer rights by 'provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'" Clemmer v. Key Bank Nat'l Ass'n, 539 F.3d 349, 351 (6th Cir. 2008) (citing 15 U.S.C. § 1693(b)).  Because the EFTA is a remedial statute, it is accorded "'a broad, liberal construction in favor of the consumer.'" Id. (quoting Begala v. PNC Bank, Ohio, Nat'l Ass'n, 163 F.3d 948, 950 (6th Cir. 1998)).  Under the EFTA, the term "electronic fund transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is

initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. 15 U.S.C. § 1693a(7). Electronic fund transfers covered by the act have three components: (1) a transfer of funds, (2) initiation by electronic means, and (3) a debit or credit to a consumer account.

Mhoon alleges in her complaint that she initiated an EFT transfer by certified mail, not by electronic transfer. Her attempted transaction is therefore not covered by the EFTA. Accordingly, the complaint fails to state a claim under the EFTA.

   *2.   Breach of Contract*

Under Tennessee law, a plaintiff alleging breach of contract must prove (1) the existence of a contract, (2) breach of the contract, and (3) damages which flow from the breach. <u>Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship</u>, 79 F.3d 496, 514 (6th Cir. 1996) (applying Tennessee law); <u>Peoples v. Bank of America</u>, No. 11-2863-STA, 2012 WL 601777, at *4 (W.D. Tenn. Feb. 22, 2012) (same). The complaint does not identify any provision of a contractual agreement which U.S. Bank purportedly breached. The complaint contains only conclusory allegations about a lack of notice, but fails to state how any such lack of notice amounts to a breach. Because the complaint fails to state a claim for breach of contract, that claim must be dismissed.

*3. Gross Negligence*

In order to establish a negligence claim under Tennessee law, a plaintiff must show the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. Bennett v. Putnam Cnty., 47 S.W.3d 438, 443 (Tenn. Ct. App. 2000). "Absent special circumstances, Tennessee does not impose a common law duty on financial institutions with respect to their customers, depositors, or borrowers." Federal Nat. Mortg. Ass'n v. Carr, No. 3:12-cv-1295, 2013 WL 5755083, at *3 (M.D. Tenn. Oct. 23, 2013) (citing Grona v. CitiMortgage, Inc., No. 12-cv-0039, 2012 WL 1108117, at *3 (M.D. Tenn. Apr. 2, 2012); Permobil, Inc. v. Am. Express Travel Related Servs. Co., Inc., 571 F. Supp. 2d 825, 842 (M.D. Tenn. 2008)); see also Fountain Leasing, LLC v. Kloeber, No. 3:12-CV-317, 2013 WL 4591622, at *6 (E.D. Tenn. Aug. 28, 2013) ("Under Tennessee Law, when two parties enter into a contractual agreement, their obligations to each other arise out of the contract itself, so that a violation of the contractual duty supports an action in contract rather than in tort.") "Without a breach of a duty, there can be no negligence." Fountain Leasing, 2013 WL 4591622, at *6. Similarly, Tennessee courts have held that the law does not generally "impose fiduciary or similar duties on banks with respect to their customers, depositors, or borrowers absent special circumstances." Id. (quoting Power & Tel. Supply Co., Inc. v. SunTrust Banks, Inc., 447 F.3d 923, 932 (6th Cir. 2006)); see also

Glazer v. First Am. Nat'l Bank, 930 S.W.2d 546, 550 (Tenn. 1996). In this case, Mhoon has not alleged a legal duty that U.S. Bank owed to her beyond the alleged contractual relationship between the parties. Therefore, the complaint fails to state a claim for gross negligence, and that claim must be dismissed.

   *4.   Breach of Good Faith*

In Tennessee, "[p]arties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract." Weese v. Wyndham Vacation Resorts, No. 3:07-CV-433, 2009 WL 1884058, at *5 (E.D. Tenn. June 30, 2009) (quoting Barnes & Robinson Co. v. Onesource Facility Servs., Inc., 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006)) (internal quotation marks omitted); see also Wallace v. Nat'l Bank of Commerce, 938 S.W.2d 684, 686 (Tenn. 1996); Elliott v. Elliott, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004). "This implied-in-law covenant has two purposes: (1) it honors the contracting parties' reasonable expectations; and (2) it protects the rights of the parties to receive the benefits of the agreement they entered into." Weese, 2009 WL 1884058, at *5 (citing Barnes & Robinson Co., 195 S.W.3d at 642). "Notably, a breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather 'may be an element or circumstance of recognized torts, or breaches of contracts.'" Id. (quoting Solomon v. First Am. Nat'l Bank of Nashville, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989)); see also Envoy Corp. v. Quintiles Transnat'l Corp., No. 3:03cv0539, 2007 WL 2173365, at *8 (M.D. Tenn. July 26, 2007) (finding that "absent a valid claim for breach of contract, there is

no cause of action for breach of an implied covenant of good faith and fair dealing"). "In other words, this claim is just 'part and parcel' of the breach of contract claim." Weese, 2009 WL 1884058, at *5 (quoting Envoy Corp., 2007 WL 2173365, at *8). Because, as stated above, the complaint fails to state a claim for breach of contract, it necessarily follows that the complaint also fails to state a claim for a violation of the implied covenant of good faith and fair dealing.

   *5. TILA*

The only reference to TILA in the complaint occurs in the count titled "Violations of the Truth in Lending Act" (ECF No. 1 ¶¶ 23-28). Paragraphs 23-28 of the complaint state:

23. In violation of the federal Truth in Lending ACT, Defendant US Bank extended credit to Plaintiff without regard to the consumer's repayment ability as of the time of the loan consummation.

24. Defendant US Bank concealed this overstatement from Plaintiff.

25. Defendant US Bank failed to disclose certain finance charges on the HUD-1 statement that were to be imposed as a part of the extension of credit in the form of the mortgage and/or failed to explain how those charges were to be determined.

26. This fee arrangement was paid in the form of an unlawful yield spread premium, undisclosed to the borrower, but paid for by plaintiff in the form of higher payments or interest over the life of the loan.

27. Defendants US Bank concealed these facts from Plaintiff these deliberate concealments prevented Plaintiff from readily discovering the undisclosed acts.

28. Plaintiff was duly diligent in ascertaining these violations.

-10-

(ECF No. 1 ¶¶ 23-28.) Mhoon's claims based on TILA are untimely. Under 15 U.S.C. § 1635(f), "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . ."[4] 15 U.S.C. § 1635(f). To the extent Mhoon seeks money damages for the alleged TILA violation, such a claim for damages must be brought within one year of the violation. 15 U.S.C. § 1640(e). Here, the mortgage transaction that is the subject of this lawsuit occurred on or about May 21, 2007. (See ECF No. 1 ¶ 3, Ex. 2.) Because more than three years have passed, Mhoon's TILA claims are time barred. Therefore, the complaint fails to state a claim under TILA.

*6. RESPA*

"RESPA was enacted to ensure transparency of the mortgage lending industry and its relationship with third parties and/or its customers." Abner v. Kaye Fin. Corp., No. 10-CV-11006, 2010 WL

---

[4]Moreover, the limitations period for rescission is not subject to equitable tolling. Famatiga v. Mortg. Elec. Registration Sys., Inc., No. 10-10937, 2011 WL 3320480, at *4 (E.D. Mich. Aug. 2, 2011) ("Courts in this district have interpreted § 1635(f) to completely preclude equitable tolling to the statute of limitations for a plaintiff's right to rescind."); Reed v. Duetsche Bank Nat'l Trust Co., No. 1:09-cv-692, 2009 WL 3270481, at *4 (W.D. Mich. Oct. 5, 2009) (collecting cases); Bolden v. Aames Funding Corp., No. 03-2827, 2005 WL 948592, at *3 (W.D. Tenn. Feb. 25, 2002); see also Beach v. Ocwen Fed. Bank, 523 U.S. 410, 419 (1998) (noting that TILA "permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run"). A time-barred TILA violation is not a defense to a subsequent foreclosure. Beach, 523 U.S. at 411-12.

4818532, at *2 (E.D. Mich. Nov. 22, 2010). The only conduct that is relevant to a RESPA violation, however, is the conduct of the originating lender. Id. Mhoon's sole factual allegation supporting her RESPA claim is that a good faith estimate was not provided in the time and manner provided by RESPA. (ECF No. 1 ¶ 30.) The warranty deed attached to Mhoon's complaint shows that the original lender was Regions Bank. (ECF No. 1 Ex. 2.) U.S. Bank was not the originating lender and could not have violated the RESPA requirements to provide a good faith estimate to Mhoon prior to or at the closing of her loan. Additionally, a plaintiff must raise a claim under RESPA within three years from the date of the alleged violation. 12 U.S.C. § 2614. As mentioned above, the loan at issue closed on or about May 21, 2007. Therefore, the complaint fails to state a claim for violations of RESPA.

    *7. RICO and Fraud*

The complaint also refers, in conclusory fashion, to RICO, 18 U.S.C. §§ 1961 *et seq*. These references are also found in the count titled "Civil RICO, Civil Conspiracy to Commit Mail Fraud, and Civil Conspiracy to Commit Wire Fraud" (ECF No. 1, at 16.) Specifically, paragraphs 53 and 54 state as follows:

> 53. On information and belief and given that the consumer credit transaction was an inter-temporal transaction with multiple assignments as part of an aggregation and the creation of a REMIC tranche itself a part of a predetermined and identifiable CMO, all defendants share in the illegal proceeds of the transaction; conspired with each other to defraud the Plaintiff out of the proceeds of the loan; acted in concert to wrongfully deprive the Plaintiff of her home; acted/acting in concert and conspiracy to essentially steal the Plaintiff [sic] home and/or convert the Plaintiff's home without providing Plaintiff

> reasonable equivalent value in exchange; and conducted an illegal enterprise within the meaning of RICO statute.
>
> 54. The Supreme Court found that the Plaintiff in a civil RICO action need establish only a criminal "violation" and not a criminal conviction. Further, the Court held that the Defendant need only have caused harm to the Plaintiff by the commission of a predicate offense in such a way as to constitute a "pattern of racketeering activity." That is, the Plaintiff need not demonstrate that the Defendant is an organized crime figure, a mobster in the popular sense, or that the Plaintiff has suffered some type of special Racketeering injury; all that the Plaintiff must show is what the Statute specifically requires. The RICO Statute and the civil remedies for its violation are to be liberally construed to effect the congressional purpose as broadly formulated in the Statute. <u>Sedima, SPRL v. Imrex Co.</u>, 473 US 479 (1985).

(ECF No. 1 ¶¶ 53-54.)

The complaint does not identify the provisions of RICO that U.S. Bank allegedly violated. The court assumes that Mhoon is proceeding under section 1964(c), RICO's provision authorizing civil suits for a violation of 18 U.S.C. § 1962. It provides in pertinent part that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . .

18 U.S.C. § 1964(c). To establish a violation of section 1962,[5] a plaintiff must show: "(1) that there were two or more predicate offenses; (2) that an 'enterprise' existed; (3) that there was a

---

[5] 18 U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

nexus between the pattern of racketeering activity and the enterprise; and (4) that an injury to business or property occurred as a result of the above three factors." VanDenBroeck v. CommonPoint Mortg. Co., 2010 F.3d 696, 699 (6th Cir. 2001). An "enterprise" can be proven by showing that a group of persons formed an ongoing organization; (2) that they functioned as a continuing unit; and (3) that the organization was separate from the pattern of racketeering activity in which it engaged. Id. RICO defines racketeering activity to include any act that is indictable under certain provisions of Title 18 of the United States Code, including wire fraud, 18 U.S.C. § 1343, and mail fraud, 18 U.S.C. § 1341.

The complaint contains no factual allegations that support the elements of a civil RICO cause of action. There are no allegations of an enterprise or of two or more predicate offenses. Assuming, *arguendo*, Mhoon's allegations of fraud are meant to be the underlying predicate offense, her complaint still fails to state a civil RICO cause of action. A civil RICO claim based on allegations of fraud must also comply with the particularity pleading requirement of Rule 9 of the Federal Rules of Civil Procedure. Brown v. Cassens Transp. Co., 546 F.3d 347, 356 n.4 (6th Cir. 2008); Blount Fin. Servs., Inc. v. Walter E. Heller & Co., 819 F.2d 151, 152-53 (6th Cir. 1987); Flores v. Emerich & Fike, 416 F. Supp. 2d 885, 911 (E.D. Cal. 2006). Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The Plaintiff[] must plead more than a generalized grievance against a collective group of Defendants

in order to meet the requirements of FRCP 9(b)." Masterson v. Meade Cnty. Fiscal Court, 489 F. Supp. 2d 740, 749 (W.D. Ky. 2007) (citing United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 643 (6th Cir. 2003)).

To comply with Rule 9(b), a complaint alleging a fraudulent representation "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Frank v. Dana Corp., 547 F.3d 564, 570 (6th Cir. 2008) (quoting Gupta v. Terra Nitrogen Corp., 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). A plaintiff must, "[a]t a minimum . . . allege the time, place and contents of the misrepresentations." Id. (citing Bender v. Southland Corp., 749 F.2d 1205, 1216 (6th Cir. 1984)). "Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). A plaintiff who asserts a claim based on a failure to disclose must plead all the elements with particularity. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 72-73, 101 (3d ed. 2004).

In her complaint, Mhoon fails to identify any false statement allegedly made by U.S. Bank, much less the time and date of any false representation. Mhoon's complaint merely cites the elements of a cause of action for fraud without providing supporting factual allegations. Accordingly, Mhoon fails to plead fraud with the particularity required by Rule 9. Therefore, the complaint fails to state a claim for civil RICO or fraud.

*8. Standing/Right to Foreclose*

Mhoon fails to state a claim based on U.S. Bank's purported lack of "standing" or right to foreclose on the Property. The complaint alleges that U.S. Bank is "not the agent of the owner or holder of the original note and mortgage and all relevant assignment(s)" and is "not the owner and holder of the mortgage and note executed by Plaintiff, and have no grounds to commence a foreclosure action against Plaintiff." (Compl. ¶¶ 63-64.) These allegations are not sufficient to comply with Fed. R. Civ. P. 8. See Coe v. Homecomings Fin., LLC, 509 F. App'x 520, 521 (6th Cir. 2013) ("Coe also asserts that Homecomings lacked authority to demand foreclosure on his property because Homecomings did not possess or own the original note and deed of trust. If such an obligation arose under a contract among the parties, the allegations are not sufficiently detailed to comply with Rule 8."); Malone v. U.S. Bank Nat'l Ass'n, No. 12-3019-STA, 2013 WL 392487, at *3 (W.D. Tenn. Jan. 30, 2013) (granting defendant's motion to dismiss plaintiff's claim that defendant had no right to demand the foreclosure on plaintiff's property, because plaintiff "has not pleaded any other information about his mortgage, the deed of trust, or the promissory note, such as 'the basic details of a contract' or 'a copy of the note, any details of the note, or even that entity that was a party to the note.'") (quoting Coe, 509 F. App'x at 521). Moreover, to the extent Mhoon's claims are based on the theory that a foreclosure sale is improper because the transfer or assignment of the original note was invalid, that theory was rejected by this court in Gibson v. Mortgage Electronic

Registration Systems Inc., No. 11-2173, 2012 WL 1601313 (W.D. Tenn. May 7, 2012). See Currie v. JP Morgan Chase Bank, N.A., No. 2:12-cv-02915-JPM-dkv, 2013 WL 3776217, at *17 (W.D. Tenn. July 16, 2013). Under Tennessee law, "the lien of a mortgage or trust deed passes, without a special assignment thereof, to the endorsee of a note or transferee of the debt secured by the instrument." Id. Mhoon has pleaded no plausible facts to support her theory that the transfer of the note was invalid.

### III. CONCLUSION

For the reasons above, it is recommended that the complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and that the defendant's Motion to Dismiss be denied without prejudice.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

December 10, 2013
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, A PARTY MAY SERVE AND FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FED. R. CIV. P. 72(b)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**